Take the case under advisement. The last case for today is Metrologic Instruments, Inc. v. Symbol Technologies, Inc. Numbers 06-3565 and 3652. Messrs. Lovenfeld and Hurley. Thank you. Good morning, Your Honors. May it please the Court. I'm Eric Lovenfeld of Hogan & Hartson. I represent the appellant, Symbol Technologies. I'd like to reserve five minutes of my 15 for rebuttal, if it's all right. Go ahead. Thank you. Your Honors, the issue before the Court is whether Judge Ackerman properly ruled as a matter of law that the agreement between these parties, which is very, very thick, clearly and unambiguously and absolutely requires Symbol to pay royalties to Metrologic on patents it has licensed, even if it doesn't use the patent, even if it's never been proven to use the patent, without giving Symbol any opportunity to disprove infringement, indeed, without any charge of infringement by Metrologic? Let's start with the hypothetical. Sure. Not guilt-assuming, I hope. Your opening statement implies that somehow there's a problem with a license that would say, I'm going to give you money in association with the rights to use your patent. Why can't parties agree to that? Whether they're going to use it or not, I'm going to pay you money. I agree, Your Honor. Okay. That's not what the agreement is. If 6.2 read that way to us, the way it seems to read that way to Judge Ackerman, in theory, there's nothing wrong with that, right? Your issue is with what the agreement really says, and you think it doesn't say that. Well, I'd be disappointed if you read it the same way, of course. But the answer is, that's right, Your Honor. And I think it's, you look at the agreement as a whole, not just that amendment, but the agreement, that amendment, all of the dealings of the parties over a period of years and years, what happened in the first breach of contract case where the arbitrator ruled that there's no breach for nonpayment absent a showing of infringement, what happened... Looking at a different portion of the agreement, right? I don't think so, Your Honor. Okay, well, let's get real specific about this. Sure. On the first go-round... Yeah. And actually, why don't I just take a minute and recount for you what I understand to be the background of this very tortured case. Both sides resolve mutual disputes, and they have an agreement which is intended to lay those to rest and give each other some rights and to move forward. That's step one, right? I'm hesitating for one reason. May I? Please. The agreement specifically has provisions allowing the parties to litigate even while the agreement goes on. So while Judge Ackerman found, and perhaps Your Honor assumed in the question, and if not, I apologize, you know, why would anybody when the parties entered into this, didn't they, you know, lay down, beat their swords into plowshares and lay down, you know, by the riverside? The answer is no. They gave each other the ability to license certain patents and licenses, and they also preserved their ability to litigate. And one of the things they preserved, which the arbitrator found and the judge correctly found the first time, was if there's a disagreement about whether a symbol product infringes the patent, you go to district court. Or you go to the arbitrator. Well, it would... If you are looking for a binding opinion, a non-binding opinion on arbitration, and the parties wouldn't agree to let the arbitrator do that. In the first go-round, Your Honor, and again, this is very complicated, and I apologize. Under 16.3 of the agreement, either side comes out with a new product, and new products only apply to 16.3 non-binding arbitration, not to what we're talking about in this case. Either side can go to the arbitrator and say, I don't want to go to court, I don't want a binding, I want a non-binding, and that's for a new metrologic product if it infringes a symbol patent or a new symbol product for metrologic. And in arbitration, where you talk about new products? Yes. So... Only... Pardon me, Your Honor. Under 16.3 for new products, you're talking about new products. Under 16.2, which is what the first case was about and what Metro One was about, it was not about new products. 16.2 specifically says that the amount of royalties owed by either side is not limited to new products, not limited to modified products, not limited to any particular product. Is this... Hang on for just one second. You're probably going to have to bring it up to the mic. Sure, okay. We're recording you. At 254 of the record, and this is what was at issue. Now, the reason... Let me read this for you. Scope of binding arbitration includes 16.2 little 5, quote, the amount and computation of royalties due to a party under this agreement. And it goes on and includes damages and other relief. So what happened in the first case... I didn't want to focus on the issue of preclusion. I wanted to focus on the clear, unambiguous language, but obviously I'm answering Your Honor's question. The... In the first case... Wait a minute. The reason... You're trying to use preclusion as a defense, right? Yes. We have two defenses. We have two issues on appeal. One is whether... Your lead defense is preclusion. It was the first one in the brief. I agree, Your Honor. And I'll tell you candidly, in rereading all the briefs, it occurred to me that having lived with this agreement for nine years, that it is extremely complicated, that there are different circumstances between this case and the first case. I don't think the law or the applicability of issue preclusion should be different. But if I'm going to lose this appeal because I'm pushing that, I don't want to do that. I want to look at the language of the agreement that says that a licensed symbol product is one that's covered by a claim of a MetroLogic patent. That 16.2 says, for the license of these patents, symbols shall pay. That the... And that... If I may turn to that, Your Honor, that's really more important. Well and good. Let's turn to 16.2. Okay. Well, 16.2, if I may, Your Honor, is really... 16.2 is an arbitration provision. 16.2 is an arbitration provision. What I'd like to do is look at... I'm sorry, 16.2. I mean 6.2. 6.2, right. The Third Amendment. Right. Okay. But I think, Your Honor, before we turn to that, we need to look at provisions of the underlying big agreement which were not modified or edited or changed in the Third Amendment. Okay. Section... This agreement has 40 pages of definition. A licensed symbol product, which is Section 1.44, it's at A91 of the appendix, defines a, quote, licensed symbol product as one that is, quote, covered by a claim in at least one metrologic patent in a metrologic patent family that symbol has elected. And Your Honors will... I'll say, you'll recall, I apologize for even thinking such a thing. The agreement gives symbol the right to elect licenses under metrologic patent family. When this agreement was filed and signed in 1990... In this particular suit, it's what, about the immunized products? Well, but... I mean... Yeah, no, no, I don't mean... This is a back question. Yes. No, I understand, Your Honor. The problem is that an immunized product that metrologic argued to the district judge and the district judge accepted that a so-called immunized product was one that existed as of the time of this Third Amendment being signed in 1999 and one that was escrowed and put on a list. But in fact, an immunized product does include those things, but it also includes what the agreement terms a non-infringing modification of an immunized product. It's a little counterintuitive, but let me tell you what it means. And it's important because in the first go-round, the one that the arbitrator said no damages without proving infringement, symbol had introduced new products. We said, in the litigation that followed, a litigation for patent infringement that they ultimately dropped, that the products were immunized, not because they were escrowed in 1999, because they weren't. They were non-infringing modifications of escrowed products. The point being, symbol puts out a device and it's put into escrow, and it puts out a new version of the device with different bells and whistles and what have you. But that new device doesn't infringe patents that were not infringed by the immunized device. It's a non-infringing modification and symbol gets a pass. I assume for the sake of discussion that we thought, okay, the immunized versus non-immunized is not a significant distinction here. Okay. But that we were looking at the language of 6.2. Okay. 6.2, I'm sorry. 6.2, which appears to say straightforwardly, quote it, for the license of the first three electric metrologic patent families and the rights and immunities granted under this article. Yep. Ellipse, symbol shall pay metrologic as follows, and then there's a flat rate series. There's nothing about covered products. There's nothing about anything except I got a license under the first three electric patent families. I'm paying you this. Respectfully, I don't agree. I don't agree with... Well, I will because a licensed product is defined in the agreement as one that is covered by a metrologic patent. Where does it say a licensed product in 6.2? It says the sale of the royalty applicable... I'm sorry. For the license royalty, it says under 6.2 on A232, royalties due for license of first elected metrologic patents, and it says for the license of the first three, and it goes on. Right. I just read it. But it says the same thing about the other ones. It says exactly the same thing about the fourth, fifth, and sixth elected families. That's what we did in the first case, and everybody agreed, or at least the arbitrator... Are we back to preclusion? Because if we're on plain language, we stick on plain language. No, we're not. It's not preclusion, Your Honor. It's the language of the agreement talks about license.  The whole license talks about license. So when we talk about 6.2... I'm sorry. I'm not doing a good job. Let me just put it in my rural Ohio area. Sure. You were paying royalties for certain products in a family, correct? That the other side had a patent on, correct? We don't think they had... We don't think... We never thought... You were paying royalties for what? Five and a half years? Five and a half years, right. And then all of a sudden, you stop paying royalties because you have an argument that you don't need to anymore, which I assume is why you put your issue of preclusion first. I thought it was simpler and more straightforward. I'm frankly... I'm not sure that it is, but I think it's... If I may, Judge Amber. I mean, the irony here is that this shoe is on exactly the other foot. They took licenses. They paid us for years. They stopped. We sued them in the Eastern District, and the judge said, no, no, no, they never admitted it. So we arbitrated it, and we won a lot of money. It's the same thing. When he gets up here, we'll be asking him all about the Eastern District of New York. But now we're asking you this question. When you say it's exactly the same thing, when I read Section 6.4, I do read about license symbol products. I see that language, and I see that language in 6.10. I don't see that language in 6.2. In 6.2, I see, for the license of the first three electrometrologic patents, symbol shall pay. That's what I see. So I need you to explain to me how 6.2 and 6.4 are really the same when one talks about license symbol products and the other doesn't. Okay. Can I go back for a moment to the overview? Sure. Which is the overview to Amendment 6, to Article 6, which is just before what Your Honor read to us. And I think I quote in the brief the fact that Article 20 of the agreement says that the overviews are for the purpose of evidencing the party's intent. Excuse me. The overview specifically says that the royalty rate for subsequently elected families depends upon whether any of the first three elected families are no longer applicable. This is A231. Whether by expiration or lapse of the patents, discontinuation of all licensed symbol products, or otherwise. So that the overview, which deals with the intent of the parties in this thing, clearly, I submit, sets forth circumstances where the first three patents are not applicable and symbol pays a lower royalty. And if symbol's royalty was not dependent on whether it uses the patents or the license that is covered by a claim, there's no reason why that would happen. That's the whole point of this thing. One last point, and if I may. 4.3 of the agreement, which is the provision under which symbol elects licenses, specifically says, and this is A407 and 408, procedure for election, the license grant commences when symbol makes an election and terminates upon written notification to MetroLogic by symbol. So we can terminate those first three licenses and under the judge's ruling below, which I submit respectfully doesn't make sense, we wouldn't have the license and we'd still have to pay and that's not what the agreement is about. Okay. Can you explain what the outcome in the Eastern District of New York was? After you took them to task for taking the position that having paid for years and then stopping, that was silly, they in fact did owe you. Did you win? Yes. Okay. Now, speaking of shoe on the other foot, how do you square that with what you're asking for here? Very simple, if I may. All we are saying is give us our day in court. That's what happened the first time around. And we got our day in court, we litigated for three years before Judge Ackerman and when he issued his claim construction ruling, they dropped their case. We told them when we elected this license, we gave them our non-infringement opinion of counsel. They were paying Symbol $6 million a year of royalties at the time and Symbol decided as a business matter to throw MetroLogic a bone and give them some money back. And what happened here in the course, a lot of this is in Judge Ackerman's lower opinion, is as the year, in 2000 and 2001, they stopped paying. And we said... Did you get to take your bone back? I guess that's what we're really being asked here. Whether you view it as throwing them a bone or not. If you threw them a bone, do you get to pay them back? That's a good question and I think the answer is we threw them a bone with the string attached. The string was, at that time, we told them we would accept the license and pay you the money. When they stopped paying us, we had always thought we never infringed and again, this is not all in the record, but this is summary judgment stuff. They had sued another company on some of these same patents. Judge Simandl ruled for the other company and we looked at that and we said, what are we doing here? They're not paying us. We never thought we'd infringe. Judge Simandl just issued a claim construction under which we don't infringe. The arbitrator said, in order to get a claim for breach, you gotta show that there's infringement. Let them prove it. That's all I'm asking for. If we infringe and they prove it, we'll pay them the money. You want the case remanded for determination of infringement by the district court? For them to have to file a case for infringement, yes, that's what they should do if they really think we infringed. Thank you. Thank you. May it please the court, I'm Michael Hurley appearing for Pelley Metallurgical Instruments. Sure. Ready, Ron? Ron. Your Honor, despite all the briefing, this is really a straightforward contract case. There were two issues in the court below. Is Metallurgical precluded from proceeding a contract and the court having found that no, the preclusion doesn't apply here, is the... I mean, there was an issue that was decided relating to a contract and that issue is or is not being the same in this case. I take it you're saying it's different, different issues from Metro One case to this case. Oh, absolutely, Your Honor, yes. What I'm alluding to, if I wasn't clear, Your Honor, is in the pleadings below we had a two-count complaint. The first suggested that we're entitled to a declaration of and the second suggested that we're entitled to damages. In response to that, Symbol alleged a single affirmative defense, which was a preclusion. They moved the court for judgment as a matter of law that we were in fact precluded from proceeding a contract and needed to proceed via a patent infringement case. The judge says no. The circumstances between Metro Logic One and this case are very different. Here we have what is in essence a done deal. In Metro Logic One, all the questions were open. It was a mere election. There was disputes, everything. There was no agreement to pay. There was no payment. There was no escrow. These two circumstances are different. Therefore, he properly decided this preclusion did not apply. From there, we move for summary judgment saying we have what here is a failure to pay agreed upon rule. The judge agreed. The response to our motion in the court below by Symbol was issue preclusion applies. The judge says, in essence, I've already dispensed with that. Not liking that, the contract interpretation is a question of fact. The judge says, no, it's a question of law. Both parties agree this is an unambiguous agreement. Therefore, he decided not to pay. Summary judgment is that. Let me ask a question raised by your opponent in his argument. Mr. Lobenfeld made the point that if you were to look at Judge Ackerman's decision as saying you've got to pay this money, it ignores Symbol's right to terminate the contract at will. That's not what he said. Therefore, that tells you that this decision by Judge Ackerman is unmoored from the agreement. They had the right to terminate it, but he's saying you've got to keep paying. That's not fair. They could have cut it off. What's your response to that? Judge Ackerman decided the case that was in front of him and the case that's before this court. There was no counterclaim for non-infringement patents. There was no counterclaim for invalidity of patents. The thesis was strictly... There was no claim of termination, or was there? No, there was not. So that wasn't an issue below. Termination was not an issue either. Okay. Then, another point that your opponent made is that your course of dealing argument here, that, hey, they paid for five plus years, and that tells you about the intent, and that tells you what they need to be bound by, is directly opposite of the position you took when you stopped paying them on a license that you had from them, and they sued you on an Eastern District of New York. Not to put too fine a point on it, they're saying these guys are speaking on both sides of the mouse. You shouldn't believe them when they tell you that this course of dealing has legal ramifications here. What's the response to that? The first part of the response, Your Honor, is that our suggestion that they had been actually paying, which was not the entirety of our argument, but a portion of it. It was the entirety of the argument in the Eastern District, for a symbol. Explore that. What's different? What was different in the Eastern District that made your decision to stop paying different than their decision to stop paying? As Judge Ackman properly found, there was an express agreement here. There was none. The dispute in the Eastern District was whether or not McElodic had expressly agreed to pay royalties. That was an open question. Our position there was we were paying as a matter of keeping the peace until the disputes between the parties. Of the royalties as to which products? Your Honor, frankly, the 9200 series of products that are absolutely unrelated to any of the circumstances here, frankly. The 9200 to 1500 by recollection. Perhaps one other. Perhaps one other problem. But the issue was whether or not as you'll see from Judge Siebert's decision, was whether or not there was an express agreement between the parties to pay royalties. The judge found that there was not. Here, Judge Ackman found that, in fact, as you pointed out, Judge Gordon, there's a schedule of payments and an agreement to pay. I'm just asking questions here at this point, but go ahead. The two cases are, in fact, very different, although the payment is certainly a similarity between the two. But other than that, the issues were very different. If you would, can you respond to the argument that Mr. Lobenfell made that the immunized products distinction that Judge Ackman made was erroneous because that category reaches beyond what Judge Ackman said it did. I strongly disagree with that argument, Your Honor. Why? Because new symbol products, as both the arbitrator and Judge Ackman recognized, it's a defined term within the agreement. Regrettably, that was not included in the appendix, and we didn't anticipate that the argument would be made. Your Honor, an argument entirely disingenuous. I have brought with me the definition from the agreement. I'm happy to share it with counsel for him to verify it and to pass it up to the bench, if you like, or simply read it subject to counsel's agreement that this is, in fact, the agreement of what I'm sorry, the agreement's definition of what a new symbol product is. And you're saying that the definition of a new symbol product will make clear what's immunized and what isn't, or it will help make that clear? I believe it would, Your Honor. All right. Well, you know what? Why don't we take a minute? Show them what you got. If that's all right with J.M. Brosman. All right. Mr. Lovenfeld, this is what Mr. Early's saying it is. All right. Well, then with Judge Ambrose's permission, we'll let you supplement the record, the appendix with this definition. Go ahead. If you think it's pertinent, read it in. Well, I do, Your Honor. Do I think it's controlling? No. But by all means, let me read it. It's section 1.82 of the original omnibus agreement. It was not altered in the Third Amendment. And it just follows. New symbol product in quotes shall mean a symbol product that is commercially introduced after the execution date and which is not a symbol escrow product or a symbol modified escrow product. And Your Honor, as you know, the section 4.19 of Article 4 of the Third Amendment provides for the escrow of products thereby allowing them to become immunized. And that's exactly what's occurred. We have escrowed products that are immunized pursuant to Article 4 versus new symbol products that are neither escrowed nor modified escrowed with either infringing or non-infringing modifications of escrow products. And how does that play into section 6.2, which is the focus of your claim here? That's why I said it was tangential, Your Honor, in the sense that it really relates to the issue of whether or not there was a viable distinction between the new symbol products that the judge recognized and the immunized products that he found were in fact the subject of the Third Amendment and the party's symbol's election in the first few elections. Okay. Can you turn to the question of what the overview should be telling us on this panel about section 6.2? Mr. Lobenfeld says, judges, if you read the overview, you'll see that the new symbol products kind of limitation that you see in section 6.4 really is part of 6.2 as well. I take it you disagree with that. Am I right? Well, Your Honor, not entirely because the overview the real gist of it is the overview is broad-based, general language. When you get to the specific terms of the agreement, therein lies the rub. People will say the devil is in the details and the details are within the sections of the contract itself. The overview just is suggestive of this is where we're going. Do you agree with your opponent that the overview can be read in a way that imports into section 6.2 the limitations that are associated with section 6.4? Let me be real clear about the import of my question because when I read 6.4 I see licensed symbol products as a term being used to talk about what royalties are due when. When I read 6.2 I don't see that term. Mr. Lobenfell says, you know, it's like the spaghetti sauce. It's in there. If you read the overview, it's in there even if it's not in there in those words. Are you agreeing that that's actually in 6.2? No, Your Honor. Frankly, as Your Honor points out, section 6.4 refers specifically to licensed products. Section 6.2 does not. Thank you. Thank you very much. Mr. Lobenfell, you have five minutes. Is that correct, Linda? And again, because of the protocol we've been using, this gave you so much time initially. I appreciate that. Okay. Just on the last point, Judge Floyd, the overview talks about the first three elected patents not being applicable because they've expired or because Symbol has discontinued the licensed products covered by such families. What else can that mean other than payments under that article are for products that are covered? And it's talking specifically about the first three elected families, the ones we're talking about here in this case. This is A231 of the record. If Symbol elects additional patents, the amount it pays depends on whether the first three are no longer applicable and that including because the products are not covered by such families. Now, I agree with you that in 6.2 that I read it said licensed and it didn't say covered by. But I submit that the overview makes clear and the other terms of the agreement that describe the license as being for products that are covered by and combined with the fact that we can terminate this license anytime we want and would still under this construction by the judge, I have to pay. One of the things that seemed to motivate Judge Ackman here was his view that sensible people would not enter into a license which required patent infringement litigation as a prerequisite to the payment of royalties. That indeed people enter licenses so they can avoid patent infringement litigation. You take issue with that. Why would we read the license in a way that Judge Ackman said just doesn't make sense? Three points. Number one, whether it makes sense or not at the summary judgment stage, I respectfully say that doesn't apply. Is that true if we're looking as a matter of law at what contract language? No, I agree with you. If it were unequivocal the way he says it is, it wouldn't matter whether it made sense. I think it's unequivocal the way I say. I hear from your honors. You have questions and that's fine. But I don't think that that gets resolved by summary judgment. But more importantly, and this is why MedImmune, while it isn't directly applicable here, is such a dead on case. People take patent licenses all the time. The license gives you the right to use the patent. People pay money and then people decide for reasons, whatever. We had good reasons, which would be explored if we got remanded. In the MedImmune case in the Supreme Court, MedImmune took that license. They paid, I don't remember the precise amount. They made a big down payment to Genentech. They paid for a number of years. And then they said, you know what, I think these patents are invalid. I don't need this license. Does the Supreme Court, looking not at all at the license, ask the question about declaratory judgment policy? Does it make sense as a matter of public policy to require declaratory judgment plaintiffs to be put to the Hobson's choice of treble damages or not in order to challenge patents? I'm having a hard time seeing how that applies to a question of contract interpretation on a contract, which as you have pointed out yourself, is long involved in the product of many years of negotiation. I hear you, Your Honor. I didn't mean to suggest that MedImmune, as we said in our brief, it's important because when Judge Ackerman said, gee whiz, why would people negotiate this unless they had to pay? That's what happens in the real world of patent licensing. It happens all the time. And I've focused on MedImmune only because that's what Genentech said in the Supreme Court. And the opinion of the Supreme Court says, it says, licensors assert that the parties in effect settled this dispute when they entered into the license agreement. That's just what they argued below, and that's just what Judge Ackerman found. But the Supreme Court said they were free to challenge it because, and I assume because the agreement there didn't say, I admit infringement. In the patent world, as you well know, Judge Jordan, when somebody infringes and admits they infringe, they say so. They enter into consent decrees, they file agreements not to infringe, they do all the sorts of things that Symbol didn't do here. If the license said Symbol was required to pay whether they use the patents or not, whether they infringe the patents or not, whether the patents are invalid or not, it would have said so. Symbol has the absolute, I wouldn't have called them royalties, which are for patent licenses, and it wouldn't have had the provision about the royalties going down if they're no longer applicable. It would have said, in words or substance, I submit, in words, Symbol, you have to pay the following amounts in order to get the immunities in another article, even though it's not what it says. I mean, they argued below there was a typo. We didn't even get into that here. There's no typo, but if there was a typo, that's a fact question. Okay, thanks. Conclusion is a red herring, and I think it would have been a lot easier for us to understand what this case is all about if you hadn't messed around with issues. Well, I'm sorry, Your Honor. As happens, as Your Honor knows, when you're the litigator litigating the case, sometimes you get taken with your own point, and if I... I apologize. Thank you. Thank you. Thank you to both counsel for a well-argued case. We'll take it under advisement. We'll go to recess. Recess. Recess.